IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH ADRIAN FULLER,

    Petitioner,              No. CIV S-10-0808 GGH P

  vs.

RICK HILL,

                                     ORDER &
                                     FINDINGS AND RECOMMENDATIONS

    Respondent.
_____/

I. Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a negotiated plea of no contest to attempted second degree commercial burglary. In exchange for the plea, petitioner received a promise of a sentence not to exceed eights months to be served concurrently with another case.

        Petitioner raises two claims in the instant petition: 1) counsel was ineffective with respect to the plea; and 2) he did not receive concurrent time credits that were promised as part of his plea. After carefully considering the record, the court recommends that the petition be denied.

////

////

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court

authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

////
////
////

III. <u>Background</u>

The California Court of Appeal set forth the following factual summary that the court adopts below.

> At 12:15 a.m. on March 17, 2008, Officer Robert Reynolds of the Vallejo Police Department arrived at the Cemmco Machine Shop at 1640 Marine World Parkway in response to a report of "banging" noises and voices inside an adjacent large commercial warehouse building that contained machine equipment. Officer Reynolds "set up a perimeter" on the premises with the assistance of other officers. [Petitioner] and another man named "Mason" were then observed "jumping over the back fence of the business," and were taken into custody.
>
> Officer Reynolds checked the warehouse building and discovered that the door knob and lock to the main entrance door had been "broken off," and a large pry bar was on the ground nearby. Mason, who is [petitioner's] nephew, was interviewed by Officer Reynolds. He admitted that he and [petitioner] arrived together in the parking lot next door in a white pickup truck. Mason also stated that "times were tough" and he "was doing what he needed to do." He declined to further implicate [petitioner].
>
> [Petitioner] was charged with a single count of attempted second degree commercial burglary (Pen.Code, §§ 664/459). On August 6, 2008, he moved to act as his own counsel (<u>Faretta v. California</u> (1975) 422 U.S. 806). The motion was denied without prejudice on August 26, 2008, on the ground that [petitioner] was not present in court in Solano County–he was then incarcerated in Sonoma County on another case (FCR237612). After [petitioner] was transferred to Solano County pursuant to a removal order, he was given a <u>Faretta</u> waiver form on October 28, 2008, in the event he decided to represent himself. [Petitioner] continued to be represented by a deputy conflict public defender at the preliminary hearing on October 15, 2008, and thereafter. We have no record before us that the <u>Faretta</u> motion was pursued by [petitioner].
>
> On November 3, 2008, following admonitions given by his counsel, [petitioner] entered a negotiated plea of no contest to attempted second degree commercial burglary, in exchange for the promise of a sentence not to exceed the lower term of eight months to be served concurrently with the sentence in the pending Sonoma County case, with full credit for time served. He was also found in violation of probation in the other case; his probation was revoked and reinstated.
>
> Although still represented by counsel, [petitioner], acting in pro per, filed a motion to set aside his plea on November 10, 2008. [Petitioner] asserted the following grounds in support of the motion: he was denied effective assistance of counsel; he was not informed of the parole consequences of the plea; and, the plea was entered under "duress" due to lengthy negotiations during which he was forced to wear "chains all day."
>
> At the sentencing hearing on November 12, 2008, [petitioner's] motion to withdraw his plea was not pursued or mentioned. [Petitioner] was denied probation, sentenced to the lower term of eight months, and granted sentence

1  credits in the total amount of 242 day –which was in excess of the sentence. A $200 restitution fine was imposed, along with a $200 parole revocation fine which was stayed pending successful completion of parole. The motion to withdraw the plea was subsequently found moot. The present appeal was filed on December 2, 2008.

People v. Fuller, 2009 WL 2031706.

IV. Argument & Analysis

        Claim 1–Ineffective Assistance of Counsel

Petitioner argues that counsel for his plea was ineffective.

        Legal Standard

In Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984), the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." The Strickland test applies to ineffective assistance of counsel claims relating from the plea process. See Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002) (citing Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S.Ct. 366, (1985))

"Deficient performance" in this context means unreasonable representation falling below professional norms prevailing at the time of trial. Strickland, 466 U.S. at 688-89. To show "deficient performance," petitioner must overcome a "strong presumption" that his lawyer "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Further, petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. The Court must then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." Id. The Supreme Court in Strickland recognized that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Accordingly, to overturn the strong presumption of adequate assistance, petitioner must demonstrate that "the challenged action cannot reasonably be considered sound trial strategy under the circumstances of the case." Lord v. Wood, 184 F.3d

1083, 1085 (9th Cir. 1999). In the context of a guilty plea, "the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." See Lambert v. Blodgett, 393 F.3d 942, 979 (9th Cir. 2004).

To meet his burden of showing the distinctive kind of "prejudice" required by Strickland, petitioner must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838 (1993) (noting that the "prejudice" component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). In the context of a guilty plea challenge, in order to satisfy the Strickland prejudice requirement, the defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366 (1985); United States v. Howard, 381 F.3d 873, 882 (9th Cir.2004) ("To satisfy Strickland's prejudice prong, [a defendant] must allege that but for counsel's errors, he would either have gone to trial or received a better plea bargain.").

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland, supra,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S.Ct. 2052.

With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id., at 694, 104 S.Ct. 2052. It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Id., at 693, 104 S.Ct. 2052. Counsel's errors must be 'so serious' as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id., at 687, 104 S.Ct. 2052.

'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at ----, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel

7

1 satisfied Strickland's deferential standard.

2 Harrington v. Richter, 131 S.Ct. 770, 787-788 (U.S. 2011); see also Premo v. Moore, 131 S.Ct.
3 733 (U.S. 2011) (discussing AEDPA review of ineffective assistance of counsel claim where
4 petitioner alleges that counsel was ineffective at the plea bargain stage).

5 Discussion

6 This claim was brought in a state habeas petition and summarily denied by the
7 California Supreme Court. If a state court denies constitutional claims without an explicated
8 decision, a federal court reviewing a habeas corpus application pursuant to § 2254(a) "ha[s] no
9 basis other than the record for knowing whether the state court correctly identified the governing
10 legal principle or was extending the principle into a new context." Delgado v. Lewis, 223 F.3d
11 976, 981-82 (9th Cir. 2000). "While Supreme Court precedent is the only authority that is
12 controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for
13 purposes of determining whether a particular state court decision is an "unreasonable
14 application" of Supreme Court law.'" Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).
15 Thus, pursuant to Delgado, the Court must conduct an independent review of the record to
16 determine whether the state court's decision was objectively unreasonable. In Delgado, the Ninth
17 Circuit held that, "Federal habeas review is not de novo when the state court does not supply
18 reasoning for its decision, but an independent review of the record is required to determine
19 whether the state court clearly erred in its application of controlling federal law." 223 F.3d at
20 982; see also Luna, 306 F.3d at 954 (quoting Fisher v. Roe, 263 F.3d 906, 915 (9th Cir. 2001)
21 (internal citation omitted) ("We reverse only if 'a careful review of the record and the applicable
22 case law leaves us with the "firm conviction" that the state court was wrong.'")).

23 Petitioner alleges that his counsel did not speak to him often enough so he was
24 confused about the plea deal, counsel did not sufficiently investigate the case and counsel was
25 not adequately prepared to present a defense. Petitioner also states that he would have received

26

8

1  ////

3  the same sentence had he proceeded to trial.[1]

4  With the exception of being confused about the plea deal, the above alleged errors occurred prior to petitioner's entry of his no contest plea. Petitioner may not raise claims relating to the alleged deprivation of his constitutional rights that occurred prior to his guilty plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollet v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602 (1973); Premo v. Moore, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (applying Strickland standard to claim of pre-plea ineffective assistance of counsel); United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (holding that defendants' pre-plea ineffective assistance of counsel issue was waived). Because petitioner pled no contest, these claims are waived.

15  In addition to being allegedly confused by not enough interaction with counsel, petitioner also states that he had medical problems arising out of a DUI arrest two years before the instant arrest that made it difficult to cope and concentrate. Petitioner describes his condition as "delayed stress syndrome" which apparently first began to manifest while he was in custody on the instant case. Assuming arguendo that petitioner is attacking the voluntary and intelligent character of his guilty plea, any such claim should also be rejected. When the record clearly rebuts *post hoc* allegations of "confusion" and the like, no evidentiary hearing is necessary. Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933 (2007) citing with approval Totten v.

---

[1] Petitioner forgets that if he had gone to trial he would have awaited such a trial in Solano County jail–a place where the record shows petitioner had no desire to be. See text, *infra*. Because he was essentially sentenced to time served just shortly after his plea, petitioner's assertion that he would have received the same sentence is not only speculative, but absolutely wrong in terms of the reality of the situation.

9

1  Merkle, 137 F3d 1172, 1176 (1998); see also, Cullen v. Pinholster, _U.S._, 131 S.Ct. 1388 (2011

2  ( a § 2254(d) issue must be decide on the state record).  A review of the plea proceedings

3  demonstrates that petitioner's plea was voluntarily and intelligent and he was not suffering from

4  any confusion, stress or other mental problems.  If nothing else, the record shows that petitioner

5  was extremely eager to plea quickly as soon as possible in order to be released.  Doc. 21, at 90-

6  108.

THE COURT: Sir, I understand that you all have reached a disposition, that you will get -- close to credit for time served.
   It's a People v. West plea is the maximum punishment; exposure is year and six months.
   Everyone has agreed to a low term of eights months.  You've got 231 days to run concurrent with your Sonoma County case.  Your lawyer is asking me to take your plea today, but put over sentencing for a week to make sure you are on the -- that you've got exact credits.
   Is that what you want to do?

[PETITIONER]: Um, I'm short a week.

THE COURT: Nine days is what she tells me.

[PETITIONER]: I just, if I can just go back to Santa Rosa, if it takes nine days.

THE COURT: I'll sentence you today, if you want, so it's - -

[PETITIONER'S COUNSEL]: No, if I -- may I have a minute?

([Petitioner's counsel] confers with [petitioner]).

THE COURT: Okay, what do you want to do?

[PETITIONER'S COUNSEL]: Your honor, [petitioner] is short nine days, and I would prefer to make sure that he serves his nine days rather than risk the possibility of him being picked up by the Department of Corrections and then having to find his way back to Sonoma County to finish his term there.

THE COURT: How about I take his plea today; I put over sentencing to the 12th?

[PETITIONER'S COUNSEL]: That would be fine.

THE COURT: Okay. [Petitioner] is that all right with you?

[PETITIONER]: Sure.

([Petitioner's counsel] confers with [petitioner]).

| | |
|---|---|
| 1 | [PETITIONER'S COUNSEL]: Today is the 3rd. |
| 2 | THE COURT: Three plus nine is 12. |
| 3 | [PETITIONER]: I want to get out of here so much. |
| 4 | THE COURT: Well, I mean, you just run the risk of ending somewhere. |
| 5 | [PETITIONER]: Else. |
| 6 | THE COURT: Where -- |
| 7 | THE WITNESS: Worse; okay, I understand. |
| 8 | THE COURT: That's why she wants to do this, but it's your call. |
| 9 | [PETITIONER]: All right. |
| 10 | THE COURT: All right. Blue form; did you sign the third page? Looks like. "Kenneth A. Fuller"? |
| 11 | |
| 12 | [PETITIONER]: Yes. |
| 13 | THE COURT: And your initials, "KF" three times on the back, five times on the second page and five -- four times on the front? |
| 14 | [PETITIONER]: Yes. |
| 15 | THE COURT: Did you initial sign it after discussing it with [] your lawyer? |
| 16 | [PETITIONER]: Yes. |
| 17 | THE COURT: It says you want to enter a new and different plea of no contest pursuant to People v. West, under attempted second degree commercial burglary of Samco Machine Shop. |
| 18 | |
| 19 |     Is that what you want to do? Enter a plea pursuant to People versus West? |
| 20 | [PETITIONER]: Um, we had discussed -- what that, the conversion, that window? Um, what is there? It was an Alfred plea, which is a -- |
| 21 | THE COURT: Yeah, People v. West; Alfred is federal version of it. |
| 22 | [PETITIONER] Can we do that? |
| 23 | THE COURT: That's what I said; that's what we're doing. That's why I said, People v. West. I'll accept that plea. I don't have a problem with that, just make sure you understand the rights you are giving up. |
| 24 | |
| 25 |     Giving up your right to a jury trial; couldn't be convicted unless 12 citizens found you guilty beyond a reasonable doubt. |
| 26 |     I accept your plea today, we won't have a trial. Do you understand that? |

1    [PETITIONER]: Yes.

2    THE COURT: Giving up the right to, at that trial, to confront witnesses, see them, hear them testify under oath. That is, give up the right to confront or cross examine the prosecution's witnesses; giving up the right to subpoena your own witnesses; giving up the right against self-incrimination, and a right to appeal. Since it's an attempted, by law, the maximum is 18 months.

5    [PETITIONER]: Okay.

6    THE COURT: And so any questions about any of the rights you are giving up?

7    [PETITIONER]: No.

8    THE COURT: No? Now, the agreement of the parties in the low term of eight months, of which you have today 231 days.
Against this, as I said it's going to run concurrent with the Sonoma case, right?

10    [PETITIONER]: Right.

11    THE COURT: So that's as I understand it.
There may be some restitution; we'll reserve on that. I'd reinstate your misdemeanor probation. All prior orders will remain in full force and effect. Do you have any questions about your deal?

14    [PETITIONER]: Um --

15    THE COURT: Other than, I'm going to put sentencing over.

16    [PETITIONER]: I'm sorry, I didn't mean to go on and on here, but probably limit to the eight month, there's no way of bringing that back any?

17    THE COURT: Bringing it back?

18    [PETITIONER]: So would it be possible to be sentenced today without losing that, you know? Would taking a --

19    THE COURT: I'd -- I can sentence you today, no problem

20    [PETITIONER]: What I mean to say is that, I mean, could we lower the -- or is set by law?

22    THE COURT: Yeah, the eight is set. It's fixed.

23    [PETITIONER]: Okay.

24    THE COURT: Because what it -- just so you know how we get there, the normal exposure is 16 months, two years, three years.
Because it's an attempted it's halved at eight, so we really don't have any wiggle room with the eight to move it. All we can do, as the People have done is offer the lowest possible non-probation term, so, and when you run your credits

1   against it, you are pretty much nine days away from being there.

2   [PETITIONER]: All right.

3   THE COURT: Does that make sense?

4   [PETITIONER]: Yes, it does.

5   THE COURT: Any other questions?

6   [PETITIONER]: No.

7   THE COURT: What's your plea to Count 1?

8   [PETITIONER'S COUNSEL]: People v. West, no contest.

9   THE COURT: I need to hear him so it.

10   [PETITIONER]: People versus West, no contest.

11   THE COURT: Both counsel stipulate to a factual basis?

12   [PETITIONER'S COUNSEL]: Yes.

13   THE COURT: People versus West plea?

14   MR. DUBAIN: Yes

15   THE COURT: All right.
   I will find [petitioner] has been fully informed of his constitutional rights
16   and the consequences of his plea in this case, and he understands them.
   I further find that he's knowing, intelligently, and voluntarily waived his
17   rights and there is a factual basis for his plea, pursuant to People versus West, for his plea.
18       It's ordered that his plea be accepted and entered into the minutes of this court. This executed Waiver of Rights form is to be filled in the records of this
19   Court and incorporated in the above case by reference.

20   Doc. 21 at 98-103.

21   It is clear that petitioner made a knowing, intelligent and voluntary plea and there

22   is no indication in the record that he was not competent to plea due to any mental problems.[2]  In

23   fact, just before petitioner pled guilty he was questioning the trial court about issuing a sentence

24   of less than eight months. The record clearly refutes petitioner's latter day assertions. Petitioner

25

26   [2] Petitioner does not specifically allege he was incompetent during the plea, just that for the period prior to the plea he was stressed and found it difficult to concentrate.

13

only offers the barest allegations concerning his alleged mental issues and simply implying he was not competent to plea without any evidence in support is insufficient. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)). Moreover, petitioner's claim that he would have received the same sentence had he gone to trial is incorrect. Petitioner could have received 18 months but instead the plea provided for 8 months, which was stated by the trial court during the plea.

Petitioner also argues that counsel was ineffective for not disclosing that after the plea, he could be placed on parole that would require petitioner to move to Solano County and not be allowed to operate his mobile scrap business beyond 50 miles of Vallejo. However neither of these conditions are as a result of any alleged deprivation of petitioner's right to counsel nor has petitioner shown that these restrictions were actually imposed.

If these restrictions do exist, petitioner's claim is still meritless.[3] "When accepting a defendant's plea, courts must inform defendants of only direct, rather than collateral, consequences of a guilty plea." Garcia v. Felker, 2009 WL 2776664, at *8 (C.D. Cal. Aug. 26, 2009), citing Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988). These conditions of parole regarding residency are collateral as they are beyond the control of the sentencing court and the authority lies "in the hands of another government agency." Torrey, 842 F.2d at 236. This also fails to state a viable argument and the entire claim should be denied.

Claim 2 – Custody Credits

Petitioner states that he did not receive appropriate custody credits pursuant to his plea agreement. Of course, the operative federal issue, i.e., the clearly established Supreme Court authority, relates to enforcement of plea bargains. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495 (1971).

---

[3] Petitioner was released from prison on January 7, 2011, and his new address is listed in Encinitas, CA, near San Diego, and well outside of Solano County. Doc. 22.

14

Discussion

In the instant case, petitioner was arrested on March 17, 2008, and pled guilty on November 3, 2008. This occurred in Solano County, Case No. VCR196729. As stated above petitioner was sentenced to 8 months, and granted sentence credits in the total of 242 days, which was in excess of his sentence. People v. Fuller, 2009 WL 2031706.

On June 2, 2008, petitioner was arrested and then pled no contest on June 16, 2008, to receiving stolen property. This occurred in Sonoma County, Case No. SCR537091. On September 2, 2008, petitioner was placed on probation for three years, with a condition that he serve 10 months in jail (of which he had already served 139 days). People v. Fuller, 2009 WL 2751220.

On March 18, 2009, after petitioner had already been released from custody, police went to petitioner's home in connection with a family disturbance where petitioner was found to be under the influence of methamphetamine and was arrested. Petitioner pled guilty to violating Health and Safety Code § 11550 and was found to be in violation of his probation on the Sonoma County Case No. SCR537091. 2009 WL 3134974. On April 27, 2009, the Sonoma County Court offered petitioner probation with drug treatment provided petitioner waived his accrued custody credits or he could go to prison. Doc. 25, Exh. 8. Petitioner agreed to waive his accrued custody credits. Id. This violation of probation was referenced as No. A124762. The trial court stated the following:

> THE COURT: [Petitioner], here is the situation before I hear from you, I read this report and read about the -- I don't even know if you are familiar with this author, but it sounded like something out of Thomas Harding, to tell you the truth, the misfortunes that you have caused and brought upon yourself and your own family members, and the issues involving substance abuse and gambling are just enormous, they seem to overwhelm you and overwhelm people close to you as well, and the Court will give you an opportunity to participate in TASC instead of following probation's recommendation to send you to prison, but in order for you to that you have to waive any custody credits that you have accrued in this case thus far and really demonstrate your sincerity about following through with TASC disposition to allow you to go Turning Point and complete the program successfully.
>
> So if you have anything you wish to say about that at this point, Mr. Fuller,

15

|   |   |
|---|---|
| 1 | I will hear from you. |
| 2 | [PETITIONER]: Can I just clarify that?  Are you saying the year that I've already accrued, to waive that? |
| 3 | |
| 4 | THE COURT: That's correct, [petitioner].  I need to know that you are willing to make that gamble instead of gambling with other people's money in the way that you have this problem here, so that is what I'm looking for right now. |
| 5 | |

Doc. 25, Exh. 8 at 15-16.

Unfortunately, in October 2009, petitioner was found to have again violated probation in No. A127226.  People v. Fuller, 2010 WL 3100427.  This violation was also part of Sonoma County Case No. SCR537091.  A three year sentence was executed in December 2009, with petitioner receiving 193 days of pre-sentence credit, consisting of 129 actual days in custody and 64 days of conduct credit.  Id.

On December 22, 2010, in the instant federal habeas case regarding the Solano County crime, a new claim was added where petitioner alleged that part of his plea in Solano County involved receiving 71 days of credit for the Sonoma County case.  Though, petitioner does not point to any evidence that his plea deal involved receiving 71 days credit for the Sonoma County case, nor does petitioner address that he waived his credits in order to be given a last chance on probation.  The Solano County plea stated that the term would be concurrent with the Sonoma County case, which petitioner initialed and signed.  Doc. 21 at 50.  There is no indication that the Sonoma County sentence was to be lessened somehow by the Solano County plea.  Even if the Sonoma County sentence was to be lessened, petitioner was released from custody and only ended up back in custody due to repeated probation violations.

However, petitioner was released from prison on January 7, 2011.  Doc. #22. More importantly, it appears petitioner was released from custody regarding the underlying conviction shortly after he pled guilty.  Assuming petitioner's claim did not become moot when he was released from custody with respect to the Solano County sentence, the claim would be moot once he was released from custody with respect to the Sonoma County sentence.  No

16

clearly established federal law was violated.

For all these reasons this claim should be denied.

Accordingly, IT IS HEREBY ORDERED that a district judge be assigned to this case.

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

If petitioner files objections, he shall also address if a certificate of appealability should issue and, if so, as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 13, 2011

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

ggh:ab
full0808.hc